# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-3429

_____

DOUGLAS UNDERHILL,

    Appellant,

    v.

STATE OF FLORIDA, COMMISSION ON ETHICS,

    Appellee.

_____

On appeal from the Florida Commission on Ethics.
John Grant, Chairman.

February 26, 2025

PER CURIAM.

Douglas Underhill appeals portions of a final order and public report of the Commission on Ethics ("Commission") directing public censure, reprimand, and payment of civil penalties amounting to $35,000 for ethical violations committed while serving as a county commissioner for Escambia County. The Commission further recommended, based on the "cumulative severity" of the ethical violations, that Underhill be removed from office. Underhill challenges only two of the five statutory violations. Specifically, he challenges the Commission's rejection and modification of the findings of fact and conclusions of law by the administrative law judge ("ALJ") that he violated subsections 112.313(8) and 112.3148(3), Florida Statutes. Underhill also challenges the Commission's increase in monetary penalties, as

1

well as the penalty of his removal from office. Because we find the Commission incorrectly applied the two statutory provisions at issue to conclude Underhill violated them; and because we find the Commission abused its authority when it increased the recommended penalties; we set aside the final order and public report.

## I. Facts

The underlying case was consolidated from three separate ethics complaints filed against Underhill. Central to this appeal are two claims: (1) that Underhill violated subsection 112.313(8), by conferring a benefit when he published the transcript of the Board of County Commissioners' ("Board") shade meetings that were confidential and closed to the public; and (2) that he created a GoFundMe page for contributions towards his personal legal expenses in violation of subsection 112.3148(3).

Following an investigation and on recommendation of the Commission's advocate, the Commission found probable cause to believe Underhill had violated seven statutory provisions and referred the consolidated matter to the Division of Administrative Hearings for a full evidentiary hearing. After the hearing, the ALJ issued a recommended order finding Underhill committed three violations: subsection 112.3148(4) by knowingly accepting one or more contributions to his legal defense fund from vendors and/or lobbyists; subsection 112.3148(8) by failing to disclose contributions to his legal defense fund; and subsection 112.3148(8) by failing to disclose a gift of legal services. The ALJ recommended a public censure and reprimand and a civil penalty of $5,000.

The ALJ determined that the Commission failed to prove by clear and convincing evidence that (1) Underhill violated subsections 112.313(6) and 112.313(8) by releasing the shade meeting transcripts because he enjoyed no specific benefit from the release of the transcripts; (2) that he "solicited" donations to his legal defense fund in violation of subsection 112.3148(3); and (3) that he violated subsection 112.3148(8) by failing to disclose reimbursed travel and shipping expenses.

The parties timely filed exceptions to the ALJ's recommended order, which the Commission considered at a meeting. The Commission rejected and modified certain factual findings and legal conclusions of the ALJ. The relevant portions of the Commission's final order are summarized as follows:

- As it relates to the violation of subsection 112.313(8), based on Underhill's undisputed release of the shade transcripts to a private citizen, Kemp Evans, the Commission determined that though competent, substantial evidence supported the ALJ's conclusion that Underhill did not enjoy a benefit from the release of the transcripts, the ALJ failed to consider whether Evans received a benefit. The Commission determined that the record supported a finding that Evans received a benefit, pointing to both the ALJ's conclusion that "Underhill transmitted the shade transcripts to Kemp Evans in response to a public records request from Mr. Evans," and evidence that Underhill was specifically advised against the release of the transcripts by the county attorney and the County Commission, concluding the following: "[G]iven what the ALJ found . . . no further fact finding is needed to show a benefit to Mr. Evans under [sub]section 112.313(8)." The Commission did not alter the ALJ's findings of fact or conclusions of law that the Commission failed to prove by clear and convincing evidence that Underhill violated subsection 112.313(6).

- As it relates to the violation of subsection 112.3148(3), based on Underhill's creation of the legal defense fund set up on GoFundMe, the Commission rejected the ALJ's conclusion that no clear and convincing evidence was introduced to support that Underhill "solicited" donations. Further, the Commission found that the plain reading of the term "solicit" within the context of the statute does not imply any distinction to be made between "passive" or "active" solicitation and that the statute plainly contemplates the creation of a legal fund on a fundraising platform.

3

The Commission accepted the ALJ's recommendations as to the remaining statutory violations but modified the total recommended monetary penalties to $35,000 and, due to the "cumulative severity" of the five statutory violations, the Commission also recommended that Underhill be removed from office.[1]

Underhill appeals only the findings of violation of subsection 112.313(8) regarding the release of the shade meeting transcripts, violation of subsection 112.3148(3) regarding the GoFundMe page for legal expenses, and the Commission's increase in penalties and recommendation that he be removed from office.

## II. Analysis

We have jurisdiction to review the Commission's final order. *See* § 112.3241, Fla. Stat. ("Any final action by the commission taken pursuant to [part III of chapter 112, Florida Statutes,] shall be subject to judicial review in a district court of appeal upon the petition of the party against whom the adverse opinion, finding, or recommendation is made."); *see also* Art. V, § 4(b)(2), Fla. Const. As a function of this Court's power of judicial review, we typically review factual findings of a lower tribunal for sufficient support in the evidence; and legal conclusions de novo for their consistency with constitutional and statutory text.

### *Shade Meeting Transcripts Disclosure*

In his first issue on appeal, Underhill contends the Commission impermissibly rejected and modified the ALJ's findings of fact and legal conclusions to determine he violated subsection 112.313(8), which provides:

**Disclosure or use of certain information**.—A current or former public officer, employee of an agency, or local government attorney may not disclose or use information not available to members of the general public and gained by reason of his or her official position, except for

---

[1] The penalty of removal from office is now apparently moot as Underhill's term has expired.

4

information relating exclusively to governmental practices, *for his or her personal gain or benefit* or for the *personal gain or benefit of any other person or business entity*.

(emphases added).

As a backdrop, Escambia County initiated litigation in response to a water and sewer system issue. As a result, the Board conducted attorney-client meetings pursuant to subsection 286.011(8), Florida Statutes, ("shade meeting"), to discuss the litigation, inclusive of confidential settlement details. Underhill supported making the transcripts of the five meetings available to the public, but he was advised that the transcripts and discussions were confidential. The county attorney, via email, transmitted the transcripts to the Board and specifically advised that because the transcripts concerned ongoing litigation, they should be treated as "CONFIDENTIAL until the conclusion of the litigation and should not be released or shown to the public or the media." This reflected an earlier conversation between the county attorney and Underhill, in which she specifically informed him that the transcripts were confidential and should not be released to the public. Within thirty minutes of the county attorney forwarding the transcripts to the Board, Underhill transmitted the transcripts to Evans in response to a public records request. Sometime thereafter, the transcripts were posted to a Facebook page.

The ALJ declined to find Underhill violated subsections 112.313(6) and (8) because no clear and convincing evidence was introduced that Underhill obtained a prohibited *benefit* through his release of the shade transcripts. Further, evidence did not establish "a direct connection between the action at issue and the alleged benefit being sought." However, the Commission rejected the ALJ's determination only as it related to subsection (8), finding that while the ALJ was correct that there was no evidence Underhill enjoyed a benefit, the ALJ's finding that Evans received the shade meeting transcripts implicitly qualified as a benefit. To this end, the Commission agreed with the relevant exceptions submitted by the Commission's advocate and modified the finding of the recommended order. Of note, the Commission did not alter the ALJ's findings of fact or conclusions of law that the

5

Commission failed to prove by clear and convincing evidence that Underhill violated subsection 112.313(6), concerning misuse of public office, which also requires evidence of a benefit obtained.[2]

Underhill argues and we agree that the ALJ's finding that Evans received the transcript—but there was no benefit that flowed from that disclosure—is supported by the record evidence. Because the ALJ concluded that no evidence was submitted to prove a benefit was received, the Commission's modification of this finding—by reaching the ultimate factual conclusion that the disclosure was the benefit to Evans—essentially was the Commission's misinterpreting the applicable statute to equate "disclose" with "benefit." We agree with Underhill that there was no evidence to prove Evans received a benefit by having the transcripts other than his mere receipt. The ALJ's findings of fact that there was no proof that Underhill or anyone else received a benefit were supported by competent, substantial evidence. The Commission essentially equated "disclose" and "benefit" to fill this fatal gap in the evidence presented as part of the advocate's attempt to prove a violation of section 112.313(6). But the text does not support this application of the law. Instead, the statutory text prohibits disclosure of confidential information but uses the preposition "for" to modify "disclose" and limit the prohibited activity to specified purposes: *for* the reporting individual's own personal gain or benefit, or *for* the gain or benefit of someone else. This means the advocate had to prove not just the fact of the disclosure but also that the purpose of the disclosure was for Underhill's or Evan's gain. The ALJ found that the advocate failed as to the latter. The Commission did not point to any evidence the ALJ overlooked, and it incorrectly interpreted the statute to get

---

[2] Section 112.313(6), provides:

MISUSE OF PUBLIC POSITION.—No public officer, employee of an agency, or local government attorney shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others. This section shall not be construed to conflict with s. 104.31.

6

around these shortcomings in proof. The Commission incorrectly interpreted and applied a provision of law, and the correct interpretation—which we have set out here—compelled a different result.

*GoFundMe Page*

Underhill's second argument on appeal relates to a GoFundMe page he set up for contributions to fund his personal legal expenses.[3] Contrary to the ALJ's recommended order, the Commission determined that the page constituted "solicitation" in violation of subsection 112.3148(3).

Subsection 112.3148(3) prohibits public employees, officers, and certain state personnel from:

> **soliciting** any gift from a vendor doing business with the reporting individual's or procurement employee's agency, a political committee as defined in s. 106.011, or a lobbyist who lobbies the reporting individual's or procurement employee's agency, or the partner, firm, employer, or principal of such lobbyist, where such gift is for the personal benefit of the reporting individual or procurement employee, another reporting individual or procurement employee, or any member of the immediate family of a reporting individual or procurement employee.

(emphasis added). The root verb "solicit" is not defined in the statute, so the ALJ correctly ascribed the plain and ordinary meaning of the term as derived from a dictionary, *Conage v. United States*, 346 So. 3d 594, 599 (Fla. 2022), and concluded as follows:

> 79. Commissioner Underhill's GoFundMe page was a passive, as opposed to an active, request for funding. In other words, there is no evidence that he personally or

---

[3] In 2020, a year after Underhill established the GoFundMe account, a local real estate developer, Fred Hemmer, contributed $250 toward to the account. Hemmer was both a vendor and a lobbyist of the County Commission.

directly contacted Mr. Hemmer and asked him to donate to his legal defense fund through the GoFundMe page.

. . .

81. Section 112.3148(3) utilizes the term "soliciting," and that term is alternatively defined as: (a) to make petition to; entreat; (b) to approach with a request or plea; (c) to urge strongly; and (d) to try to obtain by usually urgent requests or pleas. The foregoing definitions strongly imply that someone must personally or directly contact a prospective donor in order to be "soliciting."

. . .

83. Given that there is no evidence that Mr. Underhill directly contacted Mr. Hemmer in order to obtain a donation to his legal defense fund, the Advocate failed to prove by clear and convincing evidence that Commissioner Underhill violated section 112.3148(3).

However, the Commission rejected the ALJ's interpretation and revised the conclusions of law in the above paragraphs to conclude that although there was no persuasive evidence that Underhill directly contacted Hemmer, the statute did not require it. The Commission went on to find that the cited definitions do not limit "soliciting" to circumstances of personal or direct contact with a prospective donor but extend to requests collectively made to a group or community, such as general funding requests through a GoFundMe account.

"[T]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage*, 346 So. 3d at 598 (internal quotations and citation omitted). But the Commission failed to consider the context in which solicit was used and the broader context of the statute as a whole. And specific to this appeal, "[B]ecause the Code of Ethics is penal in nature, it must be strictly construed with doubts being resolved in favor of the employee." *Loebig v. Fla. Comm'n on Ethics*, 355 So. 3d 527, 530 (Fla. 1st DCA 2023).

8

Take the gerund "soliciting" (our having already defined the root verb), the object or activity being prohibited in subsection three of section 112.3148. The object of the verbal "soliciting" is "a gift." The preposition phrase that follows—"from a vendor [or a] lobbyist"—functions as an adjectival phrase to "indicate the source, cause, agent, or basis" of the gift. In context here, given how we have defined "solicit," the prepositional phrase tells us what kind of gift is prohibited from solicitation. That is, a reporting individual is prohibited—not from soliciting, and not from soliciting gifts generally—but from soliciting a particular type of gift: one that has as its source, among others, a vendor or lobbyist. The advocate had to prove that the website was set up specifically to ask for this type of gift. But as the ALJ found, there was no evidence showing that the website was set up to operate as anything other than as a solicitation of monetary contributions, regardless of source. There being nothing in the evidentiary record to contradict the ALJ's finding, the Commission's conclusion that the website did constitute a prohibited solicitation was—once again—an erroneous reading of the statute's plain and ordinary meaning.

Further support for the ordinary meaning we just set out can be found in the surrounding text. Consider "solicit" in the "company it keeps" with other relevant subparts. *Conage*, 346 So. 3d at 600. Subsection 112.3148(4) provides, "A reporting individual or procurement employee or any other person on his or her behalf is prohibited from knowingly accepting, *directly or indirectly*, a gift from a vendor . . . ." (emphasis added).

The term "directly or indirectly" serves to modify "accepting," showing the Legislature's focus at getting at both passive and active means of obtaining gifts from a vendor or lobbyist when it comes to receipt, rather than solicitation. Subsections 5(a), 6(a), and (6)(d) include the "directly or indirectly" modifier to specific prohibitions. The modifiers "directly or indirectly" are absent in subsection (3) which addresses "soliciting," further indicating that the focus of this subsection's prohibition is the active and intentional solicitation of a particular type of gift: those coming from vendors or lobbyists. A general website seeking contributions without specifying a source (needed to satisfy the function of the

9

preposition "from"), and without evidence that the website functionally was set up to do just that (say a website that could be accessed only by lobbyists and vendors, such that any gift received necessarily would be one from a lobbyist or vendor), cannot, as a matter of law, fit within the statutory prohibition. The Commission incorrectly expanded the prohibition to include any website soliciting funds that can be accessed by the general public, a reading of the statute that the ordinary meaning of its text cannot bear.

A GoFundMe page is not a mass send out to thousands of recipients or even to one specific recipient. There was no evidence presented that Underhill sent it directly to anyone. In fact, the Commission's interpretation of "soliciting" would have the effect of prohibiting any public officer or employee from posting a passive GoFundMe page. And a public officer or employee who posts a GoFundMe page will likely never know whether a prohibited donor has even visited the site. Logically, subsection (3) prohibits a public officer or employee from soliciting a category of gift: one that has as its source a specifically listed individual (*e.g.*, a "vendor" or a "lobbyist"). If a general posting of a GoFundMe page is violative of subsection (3), there is no reason for the subsection to provide a list of prohibited individuals. Any general posting would be in violation.

The Commission erred in its interpretation of subsection 112.3148(3), and the ordinary meaning of that subsection—set out above—compelled a different result for Underhill.

*Penalties*

An agency's imposition of penalties is reviewed under an abuse of discretion standard. *See Mendez v. Fla. Dep't of Health*, 943 So. 2d 909, 910 (Fla. 1st DCA 2006).

Underhill argues the Commission abused its discretion by increasing the recommended penalties, imposing penalties where the ALJ did not determine he violated certain statutory sections, and for recommending his removal from office. As it relates to the Commission's increase in penalties, subsection 120.57(1)(l), Florida Statutes, provides, "The agency may accept the

10

recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefore in the order, by citing to the record in justifying the action." The purpose "is to provide some assurance that the agency has gone through a thoughtful process of review and consideration before making a determination to change the recommended penalty." *Hutson v. Casey*, 484 So. 2d 1284, 1285–86 (Fla. 1st DCA 1986). Thus, the emphasis should be on record review and particularity. *Cf.* § 120.57(1)(l), Fla. Stat. (stating that an "agency may accept the recommended penalty in a recommended order but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action").

No such record review and provision of particulars was conducted or provided before the Commission increased the penalties. Despite repeated reminders from its staff counsel of the requirements, the Commission failed or refused to address separately and particularly the penalty for each violation and specific reasons, with reference to the record, for increasing it.

Instead, the record confirms the increase in all penalties was an arbitrary decision by the Commission to impose a total penalty of $35,000. It then instructed that the total penalty amount be divided by the number of violations committed to arrive at an equally assigned penalty amount for each violation. This lack of required assessment and justification also applies to the Commission's added penalty of removal from office, as the only reasoning discussed was the "cumulative severity" of Underhill's actions. This lacks sufficient specificity. Accordingly, we find the Commission abused its discretion in increasing the penalty. In fact, when all the Commission's errors—set out above—are taken together and considered alongside the record of the final proceeding before it, we are left with the abiding impression that the final order on review is the product of the Commission's abuse of authority. Judicial review is available to correct just such abuse.

## III. Conclusion

For the reasons stated above, we set aside the order on review and remand to the Commission with an instruction to adopt *in toto* the proposed final order and public report submitted by the ALJ.

SET ASIDE and REMANDED with instructions.

B.L. THOMAS, M.K. THOMAS, and TANENBAUM, JJ. concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Mark Herron of Messer Caparello, P.A., Tallahassee, for Appellant.

Steven J. Zuilkowski, General Counsel, and Grayden P. Schafer, Assistant General Counsel, Florida Commission on Ethics, Tallahassee, for Appellee.